[Civ. No. 405. Fourth Appellate District.—August 25, 1931.]

C. E. PHILLIPS, Respondent, v. PACIFIC LAND AND CATTLE COMPANY (a Corporation), Appellant.

S. P. Williams and R. D. McPherrin for Appellant.

Hickox & Trude for Respondent.

MARKS, J.—Respondent instituted this action to recover the sum of $2,000 for the use of pasturage on property which he owned in Imperial County. The case was tried before a jury. The court gave a peremptory instruction to return a verdict in favor of respondent in the sum of

$928.20, upon which verdict the judgment was entered. From this judgment an appeal was taken.

At the time of the trial the attorneys for the respective parties entered into a written stipulation by the terms of which they agreed upon all material facts of the case except one upon which evidence was introduced. From this stipulation it appears that on and prior to August 2, 1927, the Imperial Holdings Company, Incorporated, was the owner and in possession of the land upon which pasturage was had by the cattle of appellant. Prior to this date the above-named corporation had executed its promissory notes to respondent secured by deeds of trust upon this property. These deeds of trust were duly recorded at some time prior to August 2, 1927. On February 14, 1928, the Imperial Holdings Company was in default in its payments of principal and interest on these promissory notes and respondent recorded notices of default under the trust deeds and took the necessary steps to foreclose the same. The real property was sold to him on June 11, 1928, under the second deed of trust. The sale under the first deed of trust was postponed by the trustee and was not held. On June 18, 1928, the trustee made and executed his deed under such sale conveying the real property to respondent. This deed was accepted by him before June 27, 1928, and was duly recorded on that date. It was further stipulated that the sale was held and conducted in all respects according to law and that the trustee's deed conveyed the title of the real property to respondent.

It further appears from the stipulation that the real property in question was planted to alfalfa. On August 2, 1927, appellant, with the consent and under an agreement with the Imperial Holdings Company, went into possession of the real property and pastured stock thereon, the value of the pasturage to be credited upon a former and concurrently accruing indebtedness from the Imperial Holdings Company to appellant. Appellant advanced the total sum of $14,115.93 to the Imperial Holdings Company, and the value of the pasturage used to and including the eleventh day of June, 1928, was $12,290.91, leaving a balance of $1825.02 of the indebtedness unpaid on this last date.

It was further stipulated that on the eleventh day of June, 1928, appellant had 442 head of cattle pasturing on

the property, which cattle remained thereon up to and including the seventh day of August, 1928. It was further stipulated "that the reasonable value of such pasturage so used by defendant was $22.10 per day from June 11th, to and including August 7th, 1928".

It is apparent from the judgment rendered that the trial court concluded respondent entitled to $22.10 per day for the forty-one days from June 27 to August 7, 1928, both dates inclusive.

█ It is evident from the stipulation that the trustee's deed was delivered to and accepted by respondent before June 27, 1928, and that he thereupon became the owner of the property upon which the pasturage used by appellant was growing. This deed conveyed to him the title to the real property together with the crops growing thereon. He thereupon became the owner of the alfalfa which was pastured by appellant's cattle.

A similar situation is presented in the case of *Penryn Co.* v. *Sherman-Worrell Co.*, 142 Cal. 643 [100 Pac. 150, 46 Pac. 484], which is decisive of the issue presented on this appeal. The case of *Shamlian* v. *Wells,* 197 Cal. 716 [242 Pac. 483], supports this conclusion.

In the Penryn case it was held as follows: "The deed of trust is not wholly set forth, but we understand that it was the ordinary form of the trust-deed commonly used in this state. . . . The crop in question was then growing on the trees, and was part of the realty, and the purchaser's title by relation took the date of the trust deed. The purchaser was at least in as good a position as, and had rights equal to those of, a purchaser at foreclosure sale holding a deed and having possession after the period of redemption had expired. Treating the sale here as a foreclosure where there is no right of redemption, and in view of the entry into possession under the sale by the purchaser, it is quite clear that neither the mortgagor—the grantor in the trust deed—nor his grantees under a crop mortgage executed subsequently to the trust deed would have the right to crops not severed at the time of the purchaser's deed and entry. . . . As we read in the opinions in *Huerstal* v. *Muir,* 64 Cal. 450 [2 Pac. 33]; *Dascey* v. *Harris,* 65 Cal. 357 [4 Pac. 204], cited by appellant, the growing crops unsevered are part of the realty, and while

such crops are for some purposes treated as personal property, they remain part of the realty so long as unsevered. As between the mortgagor and mortgagee of a chattel mortgage, all that appellant claims may be true, but the giving of such chattel mortgage has not the effect claimed when the rights of a purchaser under foreclosure sale are brought in question. Plaintiff took its mortgage with knowledge of the deed of trust, and that under it the bank had the right to enforce its claim by sale of the premises, and that a purchaser at such sale would take an absolute title to the land as of the date of the trust deed—a date prior to plaintiff's chattel mortgage, and that such deed would be free from any encumbrance subsequently placed upon the land.''

Appellant maintains that as its possession of the premises was lawful and under color of right on the eleventh day of June, 1928, it could not be held for the value of the pasturage used by it without and until notice of the sale was given and demand of payment for the pasturage was made by respondent. We think the record contains sufficient evidence to support the conclusion that such notice was given and demand was made. Two witnesses testified as to such notice and demand, one on behalf of respondent and one on behalf of appellant. As the court withdrew the issue of fact from the jury by giving an instruction to return a verdict for respondent, we must consider the evidence most favorable to appellant in order to determine whether or not there was sufficient evidence of such notice and demand, if such were necessary, to justify the trial court in giving the instruction.

F. L. Lathrop, one of the officers of appellant, testified that either on June 12th, or June 19th, one of the attorneys for respondent came to appellant's office and that the following occurred: ''He (the attorney) said, 'Mr. Lathrop, I presume that you have learned that we bought in the 202 Ranch by our trust deed yesterday.' I said I didn't know it, but I took that much for granted that you were going to, and he said 'Yes, we did.' He said, 'How many cattle have you got out there at the present time on the 202 Ranch,' and I said 'Four Hundred and forty head.' He said, 'What pasture are you paying out there,' and I said 'One dollar and fifty cents.' 'Well,' he said, 'of course

from now on, Mr. Phillips will expect this pasture to be paid to him,' and I said, 'Well, that makes it kind of a tough deal out of it, we have advanced quite a good deal of money for the raising of crops and are short about two thousand dollars, and I am going to stay on the place and try to feed our money out.' Mr. Hickox said, 'I don't know a thing about the cattle, but Mr. Phillips will be out here in the next two or three days, and you and Mr. Phillips can make your own deal.' I said, 'All right.' "

It is evident from the foregoing testimony that appellant had notice of the sale and had notice that respondent would demand payment for the pasturage used by appellant. This evidence does not show any agreement as to the amount to be paid for this pasturage, but it is evident that some amount would be demanded by respondent. Appellant was informed in this conversation that if it continued to occupy the premises and use the pasturage respondent would attempt to recover for it. This was sufficient notice to appellant, and the parties having stipulated as to the value of this pasturage there was no issue of fact left to be submitted to the jury. In determining the number of days this pasturage was used the court took the period most favorable to appellant, that is from June 27 to August 7, 1928, inclusive. Respondent was entitled to recover the value of the use and occupancy of his premises for this period.

Judgment affirmed.

Jennings, Acting P. J., and Allen, J., *pro tem.*, concurred.